RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE _12_/_12_/_12_
          𝒥𝒟ℬ

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION


RACHEL REEVES,                   CIVIL ACTION
      Appellant                  NO. 2:11-CV-01655

VERSUS

U.S. Commissioner of Social      JUDGE JAMES T. TRIMBLE
Security,                        MAGISTRATE JUDGE JAMES D. KIRK
      Appellee


REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE


Rachel Reeves filed an application for social security disabled widow's benefits ("DWB") and supplemental security benefits ("SSI") on January 30, 2009, alleging a disability onset date of January 1, 2008 (Tr. p. 115) due to "depression, mental illness, [and] problems with my legs and feet" (Tr. p. 132). That application was denied by the Social Security Administration (Tr. p. 57).

A de novo hearing was held on June 15, 2010 before an administrative law judge ("ALJ"), at which Reeves appeared with her attorney, a witness, and a vocational expert ("VE") (Tr. p. 19). The ALJ found that, although Reeves suffers from severe impairments of asthma, osteopenia, and social anxiety disorder (Tr. p. 11), she has the residual functional capacity to perform light work except that she must avoid concentrated exposure to dust, fumes, and

gases, and is limited to only occasional interaction with the general public or co-workers in groups of more than twelve (Tr. p. 13). The ALJ concluded that Reeves was not disabled within the meaning of the Social Security Act at any time through the date of his decision on June 24, 2010 (Tr. p. 18).

Reeves requested a review of the ALJ's decision, but the Appeals Council declined to review it (Doc. 1), and the ALJ's decision became the final decision of the Commissioner of Social Security ("the Commissioner").

Reeves next filed this appeal for judicial review of the Commissioner's final decision. Reeves raises the following issues for judicial review on appeal (Doc. 12):

> 1. The ALJ failed to evaluate Reeves' impairments in the aggregate.
>
> 2. The ALJ's use of Medical-Vocational Guidelines Rule 201.09 was erroneous as a matter of law.
>
> 3. Substantial evidence supports the conclusion that a combination of Reeves' impairments meets a listing.

The Commissioner filed a brief in response to Reeves' appeal (Doc. 13), and Reeves filed a reply (Doc. 16). Reeves' appeal is now before the court for disposition.

## Eligibility for Benefits

To qualify for SSI benefits, a claimant must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1381(a). Eligibility is dependent upon disability, income, and other financial resources. 42 U.S.C. § 1382(a). To establish disability, plaintiff must demonstrate a medically determinable physical or mental impairment that can be expected to

2

last for a continuous period of not less than 12 months.  Plaintiff must also show that the impairment precludes performance of the work previously done, or any other kind of substantial gainful employment that exists in the national economy.  42 U.S.C. § 1382(a)(3).  The earliest month for which an eligible SSI claimant can receive benefits is the month following the month his application was filed, 20 C.F.R. § 416.335, or the month following the month during the pendency of the application that the claimant meets all the eligibility requirements, 20 C.F.R. § 416.330(a).

A claimant is entitled to disabled widow's benefits if she is the widow of a deceased worker, has attained the age of 50, is unmarried, and has a disability that began before the end of the prescribed period.  The prescribed period ends with the month before the month in which the claimant attains age 60 or, if earlier, either 7 years after the worker's death or 7 years after the widow was last entitled to survivor's benefits, whichever is later.  42 U.S.C. § 401(e); 20 C.F.R. § 404.335.

<u>Summary of Pertinent Facts</u>

Reeves was 49 years old when she applied for social security benefits in January 2009, and 51 years old at the time of her June 2010 administrative hearing.  Reeves has a seventh grade education and past relevant work as a waitress and a retail store gift wrapper (Tr. pp. 133, 136).

1. Medical Records

Reeves was treated at the Southwest Louisiana Center for Health Services for social phobia, asthma, insomnia, and knee pain

3

in January 2009 (Tr. pp. 194-196).  Bryan Bolwahnn, Ph.D., M.P., a medical psychologist, evaluated Reeves at the request of the state Disability Determinations office in March 2009 (Tr. pp. 198-201). Bolwahnn noted that Reeves had left school after the seventh grade to help raise her little brother and sister, last worked in 1997 for a bridal boutique as a gift wrapper, and that her second husband had passed away in 2002, which caused her to suffer significant anxiety (Tr. pp. 199-200).   The mental status exam showed Reeves suffers from mild depression and severe anxiety stemming from social interactions, but does not have an impairment in social functioning, does not have a significant impairment in activities of daily living, and does not take any medication (Tr. p. 200).  Bolwahnn also found Reeves has a mildly impaired memory, normal concentration, probable low average intellectual functioning with great difficulty performing simple two step math operations, and poor abstract reasoning (Tr. p. 200).  Also, Reeves appeared to be able to understand and follow simple instructions, she was considered capable of handling funds, her prognosis for improvement was estimated to be guarded, and she would probably benefit from mental health supports (Tr. p. 200). Bolwahnn diagnosed social anxiety disorder at Axis I and a current GAF of 65[1] (Tr. p. 200).

---

[1] The axial system of evaluation enables the clinician to comprehensively and systematically evaluate a client.   Axis I refers to clinical syndromes, Axis II to developmental disorders and personality disorders, Axis III to physical disorders and conditions, Axis IV to psychosocial stressors, and Axis V to the global (overall) assessment of functioning.  Diagnostic and Statistical Manual of Mental Disorders, Text Revised, pp. 25-35 (4th ed. 2000) ("DSM-IV-TR").
     The Global Assessment of Functioning, or GAF, score

In March 2009, a psychiatric review technique form was filled out by non examining psychologist Kelly Ray, Ph.D. after reviewing Reeves' medical records (Tr. p. 204). Ray found Reeves has social anxiety disorder which causes mild difficulties in maintaining social functioning and in maintaining concentration, persistence or pace (Tr. pp. 204-216).

Dr. Kelly Babineaux also evaluated Reeves in March 2009 at the request of the state Disability Determinations office (Tr. pp. 218-219). Dr. Babineaux noted Reeves' history of asthma since childhood, for which she still uses nebulizers and inhalers daily, her last hospitalization for asthma having occurred in childhood (Tr. p. 219). Dr. Babineaux also noted that Reeves suffers from throbbing, all-day headaches in the temporal region about twice a week that cause nausea, and she smokes about twice a week (Tr. p. 219). Dr. Babineaux found Reeves can stand for ten minutes at a time for a total of two hours in an eight-hour day, can walk on

---

represents Axis V of the Multiaxial Assessment system. The axial system of evaluation enables the clinician to comprehensively and systematically evaluate a client. Diagnostic and Statistical Manual of Mental Disorders, Text Revised, pp. 25-30 (4th ed. 2000) ("DSM-IV-TR"). GAF is a standard measurement of an individual's overall functioning level. The GAF score is a subjective determination that represents the clinician's judgment of the individual's overall level of functioning with respect to psychological, social and occupational functioning, on a hypothetical continuum of mental health-illness. The first number indicates the patient's current GAF, while the second number indicates the highest score reported in the previous year. DSM-IV-TR at 32-34. The GAF scale goes from 0-100. A GAF score of 61-70 means there are some mild symptoms or some difficulty in social, occupational or school functioning, but generally functioning pretty well, has some meaningful interpersonal relationships. DSM-IV-TR, at 34. Also, Boyd v. Apfel, 239 F.3d 698 (5th Cir. 2001).

level ground for 100 yards, can sit for one hour, can lift 10 to 15 pounds, can drive for five miles, can dress and feed herself, and can sweep, shop, mop, cook and do dishes (Tr. p. 219).   Dr. Babineaux found Reeves was 5'1" tall, weighed 145 pounds, and her blood pressure was 120/90 (Tr. p. 220).   Reeves was taking naprosyn as needed, used an inhaler as needed, used albuterol in her nebulizer every four to six hours as needed, took Proventil-2 puffs by mouth every four to six hours as needed, and took Cenestin daily (Tr. p. 220).   Dr. Babineaux did not find any problems with Reeves' legs and feet, found mild medial joint space narrowing of her knees bilaterally that did not affect her functioning, and found her gait was completely normal (Tr. pp. 221-222).

Examinations in September 2009 at LSU Moss Regional Medical Center showed Reeves was 5'0" tall, weighed 161 pounds, had a negative mammogram, had osteopenia (moderately reduced bone density), and had mild pulmonary hyperinflation in an otherwise negative EMG (Tr. pp.226-240).

In December 2009, Reeves underwent a pulmonary function study which showed minimal airway obstruction and overinflation (Tr. p. 283).   Reeves reported smoking one pack of cigarettes a day (Tr. p. 282) and having four dogs inside her home (Tr. p. 278).   Reeves stated that she uses her inhaler and nebulizer a lot (Tr. p. 278).   Reeves further stated that she has a high anxiety level and is depressed, but has quit taking her medication (Tr. p. 278).   Reeves was prescribed a stronger dose of Celexa (Tr. p. 276).   Reeves weighed 169 pounds at that time (Tr. p. 276).

6

In May 2010, Brenda Roberts Ed.D., L.P.C., L.M.F.T., a licensed counselor and licensed marriage and family therapist, interviewed Reeves (Tr. p. 287). Roberts noted that Reeves reported being depressed and anxious since 1995, and has had additional symptoms since 2006 (Tr. p. 288). Roberts diagnosed moderate to severe major depressive disorder, recurrent generalized anxiety disorder with agoraphobia at Axis 1, and a current GAF of 40,[2] stated that Reeves is unable to tolerate the stress of employment, and found her anxiety and depression are so severe that her memory and concentration are significantly impaired (Tr. p. 289).

### 2. 2010 Administrative Hearing

At her June 2010 administrative hearing, Reeves testified that she last worked for about a year in 1997 as a housekeeper, but stopped because her employer had a large family (eleven children) that was too much for her to handle (Tr. pp. 22-23), and she had a small child at home to care for, as well as her own house (Tr. p. 26). Before that, Reeves worked as a waitress, a gift wrapper in a bridal boutique, and a hostess and cashier in a restaurant (Tr. p.2 6). Reeves testified she cannot work now because she does not like to leave her house to go into society, she is depressed (Tr. p. 23), she does not like dealing with the public, and she has problems with her feet and legs, so she cannot stand and walk all

---

[2] A GAF score of 31-40 means there is some impairment in reality testing or communication OR major impairment in several areas such as work or school, family relations, judgment, thinking, or mood. DSM-IV-TR, at 34.

day (Tr. p. 27).   Reeves testified that she started the eighth grade in school but does not remember if she finished it (Tr. p. 25).

Reeves testified that she just started taking a new antidepressant, Paxil (she was on Celexa before), and has a nebulizer, a breathing treatment, and two different inhalers for her asthma (Tr. pp. 23-24, 43).  Reeves testified that she cries a lot (nearly every day), does not want to go outside or be around people, and is scared to be around people (Tr. pp. 27-28).  Reeves testified that she goes grocery shopping, does not go to church but hosts a Bible study in her home, and visits family on holidays (Tr. pp. 27-28).  Reeves testified that she last went to the hospital in about July 2009 for an asthma attack (Tr. pp. 30-31).

Reeves testified that her former father-in-law helps support her and she does not have any income of her own (Tr. pp. 28-29), but she receives food stamps (Tr. p. 29).  Reeves testified that she was just awarded temporary custody of her twenty-one month old granddaughter, and is hoping to get permanent custody (Tr. pp. 29-30).

Reeves' former father-in-law, Clifton Reeves, also testified at the hearing (Tr. p.31).  Clifton Reeves testified that Reeves was married to his son for more than twenty years and he has remained close to her (Tr. p.3 2).  Clifton Reeves testified that he has been assisting Reeves financially for about two years, by occasionally paying a bill for her (Tr. p. 34), and does not believe she can work (Tr. p. 32).  Clifton Reeves testified that

8

Reeves cannot be around a group of ten to twelve people, and had missed a Christmas celebration at his house because of it (Tr. p. 33).   Clifton Reeves testified that Reeves is an excellent housekeeper (Tr. p. 33), but cannot be outside or mow grass because of her asthma (Tr. p. 34).   Clifton Reeves testified that Reeves calls him sometimes when she is depressed (Tr. p. 34).   Reeves testified that caring for her grand-daughter seems to have helped Reeves a lot (Tr. p. 35).

The vocational expert ("VE") testified that Reeves' prior work as a gift wrapper was light, semi-skilled, SVP 3[3] (Tr. p. 37), her prior work as a housekeeper was medium, SVP 3, and semi-skilled, and her prior work as a waitress was light, SVP 2, unskilled (Tr. pp. 37-38).

The ALJ asked the VE to consider a hypothetical involving an individual of the same age, education, and work experience as Reeves, who can work at the medium exertional level, who should avoid concentrated exposure to dust, fumes, and gases, and have only limited interaction with the general public or co-workers in groups greater than twelve at a time (Tr. p. 38).   The VE testified that such a person could still work as a gift wrapper (Tr. p. 39).

---

[3] SVP, or Specific Vocational Preparation, refers to the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a particular occupation. See Dictionary of Occupational Titles ("DOT"), App. C (rev. 4th ed.1991).   Unskilled work usually requires less than thirty days training, which corresponds to an SVP of 1 or 2; semi-skilled work corresponds to an SVP of 3 or 4; and skilled work requires an SVP level of 5 or higher.   Social Security Ruling 00-4p, 2000 WL 1898704, at *3 (2000).   See also generally 20 C.F.R. § 404.1568.

The ALJ posed a second hypothetical in which the same individual must also avoid more than occasional interaction with the general public or co-workers in groups of more than six people at a time (Tr. p. 39). The VE testified that such a person could work as a gift-wrapper in a smaller retail establishment or in a large department store depending on how the gift-wrapping section is situated with the general public (Tr. p. 39).

The ALJ then added the condition that the person "might be expected to miss four or more days of work per month" because of her fear of going out or leaving her home (Tr. p. 40). The VE testified that such a person would not be able to maintain employment because she would miss too much work (Tr. p. 40).

The VE further testified that the person would also be able to do light work as a light duty housekeeper (1000 jobs in Louisiana, 300,000 jobs in the national economy), a hand packer/packager (1800 jobs in Louisiana and 230,000 jobs in the national economy), or a food preparation worker (2500 jobs in Louisiana, 98,000 jobs in the national economy) (Tr. p. 41). The VE also testified the person could do sedentary or light, unskilled work as a telephone quotation clerk (1000 jobs in Louisiana), general office clerk (2500 jobs in Louisiana and 200,000 jobs in the national economy), or an addresser (1000 jobs in Louisiana, 85,000 jobs in the national economy) (Tr. p. 42). The VE clarified that these jobs involve only occasional contact with the general public or co-workers in groups of more than six people at a time (Tr. pp. 39, 42). The VE stated that the person would not be able to maintain

10

employment in these jobs, either, if she missed four or more days per month (Tr. p. 42). The VE further testified that the person might be able to work as a telephone quotation clerk at home (Tr. p. 43). The VE also testified that occasional crying bouts at work would not be tolerated in any of these jobs (Tr. p. 43).

ALJ's Findings

To determine disability, the ALJ applied the sequential process outlined in 20 C.F.R. §404.1520(a) and 20 C.F.R. §416.920(a). The sequential process required the ALJ to determine whether Reeves (1) is presently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Appendix 1"); (4) is unable to do the kind of work she did in the past; and (5) can perform any other type of work. If it is determined at any step of that process that a claimant is or is not disabled, the sequential process ends. A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis. Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994), cert. den., 914 U.S. 1120, 115 S.Ct. 1984 (1995), citing Lovelace v. Bowen, 813 F.2d 55, 58 (5th Cir.1987).

To be entitled to benefits, an applicant bears the initial burden of showing that she is disabled. Under the regulations, this means that the claimant bears the burden of proof on the first four steps of the sequential analysis. Once this initial burden is satisfied, the Commissioner bears the burden of establishing that the claimant is capable of performing work in the national economy.

Greenspan, 38 F.3d at 237.

In the case at bar, the ALJ found that Reeves has not engaged in substantial gainful activity since January 1, 2008, that her prescribed period for disabled widow's benefits ends on December 31, 2012 (Tr. p. 11), and that she has severe impairments of asthma, osteopenia, and social anxiety disorder, but that she does not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1 (Tr. p. 20).  The ALJ then found that, as of June 24, 2010, Reeves was still able to perform her past relevant work as a gift wrapper (Tr. p. 16).  The sequential analysis thus ended at Step 4, with a finding that Reeves was not disabled (Tr. p. 21).

In the alternative, the ALJ found that Reeves has the residual functional capacity to perform light work except for work which involves more than occasional interaction with the general public and coworkers in groups of more than six.  The ALJ found Reeves could work as a light duty housekeeper, hand packer/packager, food preparation worker, telephone quotation clerk, general office clerk, or addresser, and there was not disabled at any time through the date of the ALJ's decision on June 24, 2010 (Tr. pp. 17-18).

## Scope of Review

In considering Social Security appeals such as the one that is presently before the Court, the Court is limited by 42 U.S.C. §405(g) to a determination of whether substantial evidence exists in the record to support the Commissioner's decision and whether there were any prejudicial legal errors.  McQueen v. Apfel, 168

12

F.3d 152, 157 (5th Cir. 1999).  For the evidence to be substantial, it must be relevant and sufficient for a reasonable mind to support a conclusion; it must be more than a scintilla but need not be a preponderance.  Falco v. Shalala, 27 F.3d 160, 162 (5th Cir. 1994), citing Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 482 (1971).  Finding substantial evidence does not involve a simple search of the record for isolated bits of evidence which support the Commissioner's decision but must include a scrutiny of the record as a whole.  The substantiality of the evidence must take into account whatever in the record fairly detracts from its weight.  Singletary v. Bowen, 798 F.2d 818, 823 (5th Cir. 1986).

A court reviewing the Commissioner's decision may not retry factual issues, reweigh evidence, or substitute its judgment for that of the fact-finder.  Fraga v. Bowen, 810 F.2d 1296, 1302 (5th Cir. 1987); Dellolio v. Heckler, 705 F.2d 123, 125 (5th Cir. 1983).  The resolution of conflicting evidence and credibility choices is for the Commissioner and the ALJ, rather than the court.  Allen v. Schweiker, 642 F.2d 799, 801 (5th Cir. 1981).  Also, Anthony v. Sullivan, 954 F.2d 289, 295 (5th Cir. 1992).  The court does have authority, however, to set aside factual findings which are not supported by substantial evidence and to correct errors of law. Dellolio, 705 F.2d at 125.  But to make a finding that substantial evidence does not exist, a court must conclude that there is a "conspicuous absence of credible choices" or "no contrary medical evidence."  Johnson v. Bowen, 864 F.2d 340 (5th Cir. 1988);

13

Dellolio, 705 F.2d at 125.

## Law and Analysis

### Issue 1 - Impairments

First, Reeves contends the ALJ failed to evaluate her impairments in the aggregate. Reeves argues the ALJ found she suffers from asthma, osteopenia, social anxiety disorder, major depressive disorder-moderate to severe, and recurrent generalized anxiety disorder with agoraphobia,[4] but failed to consider her pain. However, Reeves has not shown that she suffers from disabling pain.

Although a claimant's assertion of pain or other symptoms must be considered by the ALJ, 42 U.S.C. § 423(d)(5)(A) requires that a claimant produce objective medical evidence of a condition that reasonably could be expected to produce the level of pain alleged. The mere existence of pain does not automatically create grounds for disability, and subjective evidence of pain will not take precedence over conflicting medical evidence. Harper v. Sullivan, 887 F.2d 92, 96 (5th Cir. 1989), citing Owens v. Heckler, 770 F.2d 1276, 1281 (5th Cir. 1985). The mere existence of pain is not an automatic ground for obtaining disability benefits. The factual determination of whether the claimant is able to work despite some

---

[4] The ALJ actually found that Reeves only suffers from asthma, osteopenia, and social anxiety disorder (Tr. p. 11). The ALJ found that Reeves' depression is "non-severe," or no more than a slight abnormality having such a minimal effect on her that it would not be expected to interfere with her ability to work (Tr. p. 12). The ALJ did not make any findings as to generalized anxiety disorder with agoraphobia (which was assessed by Roberts), other than to state that Roberts' assessment is not supported by the evidence (Tr. p. 16).

pain is within the discretion of the Administrative Law Judge and will be upheld if supported by substantial evidence. Fortenberry v. Harris, 612 F.2d 947, 950 (5th Cir. 1980).

A claimant's symptoms, including pain, will be determined to diminish a claimant's capacity for basic work activities to the extent that the claimant's alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. §404.1529(c)(4). Subjective complaints of pain must be corroborated by objective medical evidence. Chambliss v. Massanari, 269 F.3d 520, 522 (5th Cir. 2000). Although severe pain can constitute a nonexertional impairment, pain is a disabling condition only when it is constant, unremitting and wholly unresponsive to therapeutic treatment. Chambliss, 269 F.3d at 522.

While pain can be severe enough to create a disabling condition, the evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ who has had an opportunity to observe whether the person seems to be disabled. Elzy v. Railroad Retirement Bd., 782 F.2d 1223, 1225 (5th Cir. 1986); Loya v. Heckler, 707 F.2d 211, 215 (5th Cir. 1983). The ALJ's decision on the severity of pain is entitled to considerable judicial deference. James v. Bowen, 793 F.2d 702, 706 (5th Cir. 1986); Jones v. Bowen, 829 F.2d 524, 527 (5th Cir. 1987). Such a credibility determination is within the province of the ALJ. Carrier v. Sullivan, 944 F.2d 243, 247 (5th Cir. 1991); Wren v. Sullivan, 925 F.2d 123, 128-29 (5th Cir. 1991). Hence, the law

15

requires the ALJ to make affirmative findings regarding a claimant's subjective complaints and articulate his reasons for rejecting any subjective complaints.   <u>Falco v. Shalala</u>, 27 F.3d 162, 163-64 (5th Cir. 1994).

The ALJ made the following findings as to Reeves' pain and credibility (Tr. pp. 14-16):

> "[Reeves] complained of occasional social phobia and knee pain and swelling and denied any problems breathing. Upon examination, some knee crepitus was noted; there was no swelling....

> "The undersigned finds the claimant's statements regarding the severity of her impairments and the degree of her limitations not fully credible....

> "Upon physical examination, ambulation, getting on and off the examination table and up and out of a chair, and the ability to dress and undress were all normal.... Examination of the claimant's legs and feet was completely normal.   Dr. Babineaux noted mild medical joint space narrowing of the bilateral knees, but indicated such narrowing did not affect the claimant's functionality.   Gait was completely normal and no assistive devices were necessary....

> "After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above-residual functional capacity assessment....

> "The claimant has described daily activities which are not limited to the extent one would expect given the complaints of disabling symptoms and limitations."

Since the ALJ in this case has made the mandatory indication of the basis for his credibility choices concerning claimant's complaints, and since his choices are not unreasonable, his finding that Reeves' pain would not prevent her from performing work is

proper. <u>Carry v. Heckler</u>, 750 F.2d 479, 485-86 (5th Cir. 1985). Substantial evidence supports the Commissioner's conclusion that Reeves is not disabled by pain.

Reeves also argues that Roberts, a counselor and therapist, found she is unable to work. However, there is no evidence in the record that Roberts conducted any psychological testing; as the ALJ stated in his decision, Roberts' assessment appears to be based solely on Reeves' subjective complaints (Tr. p. 16). Bolwahnn, a medical psychologist, found Reeves suffers from mild depression and severe anxiety stemming from social interactions, but does not have an impairment in social functioning, does not have a significant impairment in activities of daily living, has a mildly impaired memory, normal concentration, probably low average intellectual functioning with great difficulty performing simple two step math operations, poor abstract reasoning, is able to understand and follow simple instructions, and is considered capable of handling funds. Therefore the ALJ's conclusion that Reeves' mental impairments do not preclude her from working is supported by substantial evidence.

This ground for relief is meritless.

## Issue 2 - Medical-Vocational Guidelines

Next, Reeves contends the ALJ's use of Medical-Vocational Guideline Rule 201.09 was erroneous as a matter of law.

Reeves misstates the ALJ's findings. The ALJ stated that, *if* Reeves had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed

by Medical-Vocational Rule 202.19 and Rule 202.11 (Tr. p. 17); the ALJ did not mention Rule 201.09.

Moreover, the ALJ did not rely on the Medical-Vocational Guidelines, stating instead that Reeves does not have the ability to perform all or substantially all of the requirements of light work (Tr. p. 17). Therefore, the ALJ relied on the VE's testimony to determine that Reeves can still perform her past relevant work as a gift-wrapper or, in the alternative, can work as a light-duty housekeeper, hand packer/packager, food preparation worker, telephone quotation clerk, general office clerk, or addresser (Tr. pp. 16-18).

Finally, Reeves' argument that the ALJ failed to consider her limitations is incorrect. The VE testified that the jobs he listed were sedentary or light duty, unskilled, and involved only occasional contact with the general public or co-workers in groups of more than six people at a time. Although Reeves also argues the VE testified she could not maintain employment if she missed for or more days of work per month, the ALJ found the medical and other evidence did not support such a limitation (Tr. p. 16).

Since the ALJ did not rely on the Medical-Vocational Guidelines to find that Reeves is not disabled, this ground for relief is meritless.

Issue 3 - Combined Impairments

Reeves contends the ALJ erred in failing to find that her combined impairments meet of equal is listing in Appendix 1.

If the claimant's condition is listed, or is medically

18

equivalent to a listed impairment, the claimant is conclusively determined disabled. Cieutat v. Bowen, 824 F.2d 348, 351 n.1 (5th Cir. 1987). Also, Selders v. Sullivan, 914 F.2d 614, 619 n. 1 (5th Cir. 1990). A claimant has the burden of proving that her condition meets or equals an impairment listed in Appendix 1. Sullivan v. Zebley, 493 U.S. 521, 110 S.Ct. 885, 891-92 (1990). See also, Selders v. Sullivan, 914 F. 2d 614, 619(5th Cir. 1990). For a claimant to show that her impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify. Sullivan v. Zebley, 110 S. Ct. at 891.

For a claimant to qualify for benefits by showing that her unlisted impairment, or combination of impairments, is "equivalent" to a listed impairment, she must present medical findings equal in severity to all the criteria for the one most similar listed impairment. Sullivan v. Zebley, 493 U.S. 521, 531, 110 S.Ct. 885 (1990); Selders v. Sullivan, 914 F.2d 614, 619 (5th Cir. 1990) (claimant must provide medical findings that support each of the criteria for the equivalent impairment evaluation); 20 C.F.R. § 404.1526 (medical findings must be at least equal in severity and duration to the listed findings); 20 C.F.R. § 416.926 (impairment is medically equivalent to a listing if medical findings related to the impairment are at least of equal medical significance). A claimant cannot qualify for benefits under the "equivalence" step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a

19

listed impairment." <u>Sullivan</u>, 493 U.S. at 531.

Reeves has the burden of proving she meets or equals a listing. Since she has not alleged specifically which listing she meets or equals, or how her impairments meets or equal all of the criteria in a specific listing, Reeves has not carried her burden of proof.

Therefore, this issue is also meritless.

Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that Reeves' appeal be DENIED and that the final decision of the Commissioner be AFFIRMED.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **fourteen (14) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN fourteen(14) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 11ᵗʰ

day of December 2012.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE